UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                  :
CHEMICAL OVERSEAS HOLDINGS, INC.,                                 :
CREDIT SUISSE FIRST BOSTON AND                                    :
DRESDNER BANK LATEINAMERIKA AG,                                   :
                                                                  :
                Petitioners,                    :   Case No. 05 Civ. 260 (GEL)
                                                                  :
vs.                                                               :   ECF CASE
                                                                  :
REPUBLICA ORIENTAL DEL URUGUAY,                                   :
                                                                  :
                Respondent.                     :
------------------------------------------------------------------x

## PETITION TO CONFIRM ARBITRATION AWARD

Petitioners Chemical Overseas Holdings, Inc., Credit Suisse First Boston and Dresdner Bank Lateinamerika AG (collectively, "Petitioners"), by their attorneys O'Melveny & Myers LLP, allege as follows:

### NATURE OF THE PROCEEDING AND RELIEF SOUGHT

1. Petitioners commence this proceeding to confirm an arbitration award (the "Award") and to have judgment entered thereon pursuant to Section 207 of the Federal Arbitration Act, 9 U.S.C. § 207. A copy of the Award is attached as Exhibit A to the accompanying Declaration of Louis B. Kimmelman, dated January 11, 2005 (the "Kimmelman Declaration").

2. Additionally, Petitioners seek prejudgment interest on the Award and the attorneys' fees and costs incurred in this proceeding.

## PARTIES

3.      Petitioner Chemical Overseas Holdings, Inc. ("Chemical") is a corporation formed under the laws of New York with offices at 270 Park Avenue, Floor 18, New York, New York 10017.

4.      Petitioner Credit Suisse First Boston ("CSFB") is a bank formed under the laws of Switzerland with offices at Uetlibergstrasse 231, 8045 Zurich, Switzerland.

5.      Petitioner Dresdner Bank Lateinamerika AG ("DBLA") is a stock corporation (*aktiengesellschaft*) formed under the laws of the Federal Republic of Germany with offices at Neuer Jungfernstieg 16, D-20354 Hamburg, Federal Republic of Germany.

6.      Respondent República Oriental del Uruguay ("Respondent" or "RoU") is the sovereign state also known as Uruguay. The RoU has provided that its notice address is as follows: Minister of Economy and Finance, Oriental Republic of Uruguay, Colonia 1089, 3er Piso, Montevideo, Uruguay and General Director of the Secretariat, Ministry of Economy and Finance, Oriental Republic of Uruguay, Colonia 1089, 3er Piso, Montevideo, Uruguay.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction to confirm an arbitral award against a foreign sovereign pursuant to 28 U.S.C. § 1330(a) because the RoU explicitly waived its immunity from suit under 28 U.S.C. § 1605(a)(1) and because this is an action under 28 U.S.C. § 1605(a)(6) to confirm an arbitration award based on an arbitration that took place in the United States and the award is governed by a treaty providing for the recognition and enforcement of arbitral awards to which the United States is a party.

8.      This Court also has subject matter jurisdiction to confirm arbitral awards governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of

June 10, 1958 (the "New York Convention") pursuant to Section 203 of the Federal Arbitration Act, 9 U.S.C. § 203.

9. This court has personal jurisdiction over the RoU pursuant to 28 U.S.C. § 1330(b).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(f) and 9 U.S.C. § 204.

## FACTS

### The Parties' Agreement

11. In late January 2002, it was discovered that the local managers of Banco Comercial, S.A. ("Banco Comercial"), Uruguay's largest private bank, had perpetrated a fraud that threatened the bank's solvency.

12. The RoU immediately urged Petitioners, who were minority shareholders in Banco Comercial, to make new investments in order to help save the bank.

13. Negotiations ensued in New York, resulting in the execution of a Subscription and Investor Rights Agreement dated as of February 26, 2002 (the "Agreement") by and between the RoU, Petitioners and Banco Comercial. A true and correct copy of the Agreement is attached to the accompanying Kimmelman Declaration as Exhibit B.

14. Petitioners agreed to invest a total of US$100 million in new capital in Banco Comercial based on the RoU's promise in the Agreement to maintain Banco Comercial in sound financial condition and provide all necessary liquidity. *See* Agreement at § 6(b)(i).

15. In the event that the RoU determined that its obligations under Section 6(b)(i) of the Agreement were unreasonable or for any reason did not discharge its obligations under Section 6(b)(i) of the Agreement to provide financial support, Petitioners had the right to

"put" (sell) their new investments to the RoU and the RoU had the obligation to buy their investments for the full amount of the investments made, totaling US$100 million. *See* Agreement at § 6(b)(ii).

### The Parties Agreed To Arbitrate All Disputes

16. The Agreement included a dispute resolution clause providing for arbitration under the Arbitration Rules of the International Chamber of Commerce ("ICC").

17. Section 11(b)(i) of the Agreement states:

> Any disagreement or dispute ("**Dispute**") between one or more Parties (the "**Disputing Parties**") arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the ICC (the "**ICC Arbitration Rules**").

18. Section 11(b)(i)(C) of the Agreement provided that the arbitration would be conducted in New York, New York.

19. The parties agreed that the decision of the arbitrators would be final and binding and could be enforced in any court of competent jurisdiction. Section 11(b)(i)(E) of the Agreement states:

> The decisions of the arbitrators are final and binding on all Parties and are not subject to appeal. The decisions of the arbitrators may be enforced in any court of competent jurisdiction, and the Parties authorize any such court to enter judgment on the arbitrators' decisions.

20. The parties further agreed that the prevailing party in proceedings, such as this, to confirm an arbitration award arising from a dispute under the Agreement, is entitled to recover reasonable attorneys' fees and expenses. Section 12(n) of the Agreement states:

<u>Attorney's Fees</u>. The Parties hereto agree that, in the event that any Party to this Agreement shall bring any legal action or proceeding to enforce or to seek damages or other relief arising from an alleged breach of any term or provision of this Agreement by the other Party, the prevailing Party in any such action or proceeding shall be entitled to an award of, and the other Party to such action or proceeding shall pay, the reasonable fees and expenses of legal counsel to the prevailing Party.

### The RoU Waived Sovereign Immunity

21. The RoU expressly waived sovereign immunity with respect to its obligations under the Agreement and to the enforcement of those obligations. Section 11(c) of the Agreement states:

> <u>Waiver of Sovereign Immunity</u>. The RoU and [Banco Comercial] each, in respect of itself and its properties, expressly and irrevocably waives any right of immunity under any law on the grounds of sovereignty or otherwise which may now or hereafter exist (whether immunity from any legal or arbitral process, from the jurisdiction of any court or from any execution or attachment in aid of execution prior to judgment or otherwise) or claim thereto which may now or hereafter exist in respect of its obligations under this Agreement, and agrees not to assert any such right or claim in any legal or arbitral action or proceeding, whether in the United States or otherwise, provided that the RoU does not waive immunity from attachment prior to judgment or in aid of execution in the courts of Uruguay under the laws of the RoU. Without limiting the generality of the foregoing, the RoU agrees that the waivers set forth in this Section 11(c) shall be to the fullest extent permitted under the United States Foreign Sovereign Immunities Act and are intended to be irrevocable for purposes of such Act.

22. The RoU has therefore waived sovereign immunity as to this proceeding to confirm an arbitration award rendered in respect of the RoU's obligations under the Agreement.

### The RoU Breached the Agreement

23. By late July 2002, the RoU had decided that it would no longer maintain Banco Comercial in sound financial condition and provide all necessary liquidity as required by the Agreement, and swiftly took steps to implement that decision.

24. The RoU chose to end its support for Banco Comercial by first suspending the bank in August 2002 and then closing and liquidating the bank in December 2002.

25. The RoU was contractually obligated to give Petitioners prompt notice if the RoU did not comply, or determined that it would not comply, with its financial support obligations pursuant to Section 6(b)(ii) of the Agreement.

26. However, the RoU failed to deliver a "Trigger Notice" to Petitioners as required.

27. As a result, on December 5, 2002, each Petitioner, respectively, delivered a Sale Notice to Respondent pursuant to Section 6(b)(ii) of the Agreement.

28. Following receipt of these Sale Notices, the RoU was obligated to purchase Petitioners' new investments in Banco Comercial within thirty (30) days pursuant to Section 6(b)(ii) of the Agreement.

29. The RoU failed to purchase Petitioners' investments as required by Section 6(b)(ii) of the Agreement.

### Arbitration Before the ICC

30. On January 29, 2003, Petitioners notified the RoU that its failure to fulfill its contractual obligations under the Agreement constituted a dispute that was being referred to arbitration under Section 11(b)(i) of the Agreement.

31. On January 31, 2003, Petitioners commenced an arbitration before the International Court of Arbitration of the ICC by filing a Request for Arbitration.

32. The RoU filed an Answer to Petitioners' Request for Arbitration on March 31, 2003.

33. As of May 20, 2003, the parties had constituted an arbitral tribunal consisting of three arbitrators (the "Arbitral Tribunal").

34. The Chair of the Arbitral Tribunal was the Honorable Howard A. Levine, a former Judge of the New York Court of Appeals. The two party-nominated arbitrators were Professor George A. Bermann, a law professor at Columbia University School of Law, and Professor Abraham D. Sofaer, a former United States District Court Judge and former legal advisor to the United States Department of State, who is currently a law professor at Stanford University.

35. Pursuant to the ICC Arbitration Rules, the parties signed a document entitled the Terms of Reference that outlined the issues to be determined by the Arbitral Tribunal.

36. Thereafter, the Arbitral Tribunal approved a procedural timetable for the arbitration.

37. Pursuant to that timetable, as subsequently modified, the parties agreed to a schedule including the following:

- document requests and document production
- motion practice relating to the document requests
- submission of pre-hearing memoranda with supporting documentary evidence, witness statements and expert reports
- an evidentiary hearing at which witnesses testified

38.     Between May 17 and May 25, 2004, the Arbitral Tribunal conducted a seven-day evidentiary hearing in New York, New York.

39.     The Arbitral Tribunal received testimony from 25 witnesses, 22 of whom testified live at the hearing (15 of these witnesses were called by the RoU).

40.     The parties submitted post-hearing memoranda to the Arbitral Tribunal based on the testimony presented at the evidentiary hearing, and the Tribunal then heard closing arguments from counsel.

## The Final Arbitration Award

41.     The Arbitral Tribunal issued its unanimous final Award dated December 31, 2004 in New York. A copy of the Award is attached as Exhibit A to the Kimmelman Declaration.

42.     In the Award, a unanimous Arbitral Tribunal determined that the RoU breached its obligations under the Agreement and awarded Petitioners the following:

    a.     Each Petitioner was awarded the sum of US$33,333,333 plus interest at the rate of nine (9) percent per annum thereon from January 5, 2003 to December 31, 2004;

    b.     Petitioners Chemical Overseas Holdings, Inc. and Dresdner Bank Lateinamerika AG were awarded costs in the amount of US$5,970,042.63 and Petitioner Credit Suisse First Boston was awarded costs in the amount of US$1,582,894.03;

    c.     Petitioners were awarded their administrative costs in the arbitration in the amount of US$287,500; and

  d. Petitioners were awarded interest at the rate of nine (9) percent per annum on all the amounts awarded above from December 31, 2004 to the date of payment.

## CLAIMS FOR RELIEF
### (9 U.S.C. § 207)

43. Petitioners repeat and reallege each and every allegation contained in paragraphs 1 through 42, above, inclusive, and incorporate them herein by reference.

44. The New York Convention, as implemented by the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.* (1999), governs this Award because the Award arises from a "commercial" relationship and involves citizens of different countries. 9 U.S.C. § 202.

45. The Parties agreed that the decision of the arbitrators would be final and binding and could be enforced in any court of competent jurisdiction. *See* Agreement at § 11(b)(i)(E).

46. This Court has jurisdiction to confirm the Award against the RoU.

47. Pursuant to Section 11(c) of the Agreement, the RoU has expressly waived sovereign immunity with respect to its obligations under the Agreement and with respect to any proceeding to confirm an arbitration award against it.

48. This petition is being filed within three years after the Award was made, as required by 9 U.S.C. § 207.

### First Claim for Relief
### (Confirmation of the Award)

49. Petitioners repeat and reallege each and every allegation contained in paragraphs 1 through 48, above, inclusive, and incorporate them herein by reference.

50. The Federal Arbitration Act provides that the "court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added).

51. None of the grounds available for refusal or deferral of recognition or enforcement of an award specified in the New York Convention apply to the Award.

52. Therefore, the Award should be confirmed pursuant to 9 U.S.C. § 207.

## Second Claim for Relief
### (Interest on Amounts Due Under the Award)

53. Petitioners repeat and reallege each and every allegation contained in paragraphs 1 through 52, above, inclusive, and incorporate them herein by reference.

54. The Award provided that the Petitioners were entitled to interest at the rate of nine (9) percent per annum on all amounts awarded from December 31, 2004 to the date of payment.

55. Therefore, Petitioners are entitled to interest on the amounts awarded to each of them under the Award from December 31, 2004 to the date of entry of a judgment confirming the Award at the rate of nine (9) percent per annum.

## Third Claim for Relief
### (Attorneys' Fees and Costs)

56. Petitioners repeat and reallege each and every allegation contained in paragraphs 1 through 55, above, inclusive, and incorporate them herein by reference.

57. The Parties agreed that the prevailing party in proceedings arising from a dispute under the Agreement is entitled to an award of reasonable attorneys' fees and expenses. See Agreement at § 12(n).

58. Therefore, Petitioners, as the prevailing party, are entitled to recover reasonable attorneys' fees and expenses incurred in confirming the Award.

**WHEREFORE**, Petitioners respectfully request an order:

(a) confirming the Award and entering a judgment in favor of Petitioners and against Respondent in accordance with the Award;

(b) awarding prejudgment interest from December 31, 2004 to the date of entry of a judgment confirming the Award at the rate of nine (9) percent per annum;

(c) awarding Petitioners the reasonable attorneys' fees and costs incurred in this proceeding to confirm the Award; and

(d) granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: New York, New York
January 11, 2005

Respectfully submitted,

O'MELVENY & MYERS LLP

By: _____
Louis B. Kimmelman (LK7154)
Dana C. MacGrath (DM6418)
Marissa Molé (MM4168)

Times Square Tower
7 Times Square
New York, New York 10036

Telephone: 212-326-2000
Facsimile: 212-326-2061
E-mail: bkimmelman@omm.com
dmacgrath@omm.com
mmole@omm.com

*Attorneys for Petitioners Chemical Overseas Holdings, Inc., Credit Suisse First Boston and Dresdner Bank Lateinamerika AG*