UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
CHEMICAL OVERSEAS HOLDINGS, INC., :
CREDIT SUISSE FIRST BOSTON, and :
DRESDNER BANK LATEINAMERIKA AG, :
:
                Petitioners, :
: 05 Civ. 260 (GEL)
                -against- :
: **OPINION AND ORDER**
REPUBLICA ORIENTAL DEL URUGUAY, :
:
                Respondent. :
:
------------------------------------------------------------x

Louis B. Kimmelman, Allen & Overy LLP,
New York, NY, for petitioners.

Lawrence G. McMichael, Dilworth Paxon LLP,
Philadelphia, PA, for respondent.

GERARD E. LYNCH, District Judge:

       Petitioner financial institutions filed this action seeking entry of a judgment confirming an arbitration award, as well as attorneys' fees and expenses, against respondent Republic of Uruguay. On June 3, 2005, this Court entered judgment confirming the arbitration award. (Doc. #30.) See Chem. Overseas Holdings, Inc. v. Republica Oriental del Uruguay, 371 F. Supp. 2d 400 (S.D.N.Y. 2005). On July 27, 2005, the Court, by stipulation of the parties, entered a supplemental judgment awarding petitioners $297,802.28 for attorneys' fees and expenses incurred in proceedings before this Court. (Doc. #50.) Respondent appealed the June 3, 2005, judgment confirming the arbitration award, but did not appeal the July 27, 2005, supplemental judgment awarding fees and expenses.

On April 14, 2006, four days after hearing oral argument, the Second Circuit issued a summary order affirming this Court's judgment and granting petitioners' motion for an award of appellate attorneys' fees. See Chem. Overseas Holdings, Inc. v. Republica Oriental del Uruguay, No. 05 Civ. 4068, 2006 WL 1049081 (2d Cir. Apr. 14, 2006). In conjunction with petitioners' fee request, the Court of Appeals directed petitioners "to submit affidavits demonstrating time spent." Id. at *1. Petitioners promptly submitted the requested documentation. Respondent, however, sought a 60-day extension of time to file a response. After the Court of Appeals apparently failed to act on its extension request, respondent filed, nearly a month beyond the time requested, an opposition that can only be described as cursory. (Ltr. from Louis B. Kimmelman to the Court, Aug. 24, 2007, Ex. 21.) In early August 2006, the Court of Appeals received two letters from petitioners objecting to respondent's belated filing, its final submissions on this matter. (Id. Exs. 22-23.)

On July 31, 2007, the Court of Appeals, noting that determining the amount of appellate attorneys' fees was a task more suitable to this Court, remanded the matter for "determination of a reasonable fee award." (Id. Ex. 1.) Petitioners now collectively submit a request for $615,920.74 in appellate attorneys' fees and $13,948 in expenses.[1] The request for attorneys' fees will be granted, as modified below. The request for expenses will be denied without prejudice.

---

[1] Petitioner Chemical Overseas Holdings, Inc. seeks $580,345.50 in attorneys' fees and $13,948 in expenses. (Ltr. from Louis B. Kimmelman to the Court, Aug. 24, 2007, Ex. 16.) Petitioners Credit Suisse First Boston and Dresdner Bank Lateinamerika AG jointly request $35,575.24 in attorneys' fees. (Id. Ex. 17.)

# DISCUSSION

I. <u>Attorneys' Fees</u>

Although the Court of Appeals, in remanding the matter to this Court, noted that "[d]etermining the amount of a reasonable attorney's fee . . . may [involve] extensive fact finding" (Ltr. from Louis B. Kimmelman to the Court, Aug. 24, 2007, Ex. 1, quoting <u>Dague v. City of Burlington</u>, 976 F.2d 801, 803 (2d Cir. 1992)), the parties have hardly provided matter for such a factual investigation. Petitioners, in seeking an award of over $600,000 in attorneys' fees incurred in the Court of Appeals, submit very little in the way of detailed time records. <u>See</u> <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1154 (2d Cir. 1983) (noting that party seeking award of attorneys' fees must provide "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done"). Petitioners provide only a very generalized account of the work done and a summary of invoices listing the attorneys who worked on the matter, their hourly rates, and the number of hours each attorney worked on the case on a monthly basis. No documentation whatsoever is provided with respect to the nature of the expenses that are claimed.

Respondent's submission is even more bare, consisting of a mere two-page letter that simply repeats its cursory objections submitted to the Court of Appeals. As petitioners duly note in a reply submission, respondent "does not challenge any specific aspect of [p]etitioners' fee applications," disputing neither the reasonableness of the billing rates of the attorneys working on the matter, nor the number of hours worked, nor the necessity for the general types of work that the attorneys undertook. (Ltr. from Louis B. Kimmelman to the Court, Sept. 24, 2007, at 1.) Indeed, respondent does not even object to the lack of specificity in petitioners' submission.

Instead, respondent makes two arguments. One can be dispatched immediately. Respondent makes the remarkable argument that petitioners' fees should be reduced on the ground that the "outcome [in the Court of Appeals] largely favored [respondent]" because the Second Circuit noted that "confirmation of the award did not require immediate payment by Uruguay." (Ltr. from Lawrence G. McMichael to the Court, Sept. 18, 2007, at 2.) This argument verges on the frivolous. This Court entered a judgment confirming the arbitration award, but specifically did not require immediate payment and, indeed, included a provision in the judgment precluding its enforcement absent further application to the Court. See Chem. Overseas Holdings, 371 F. Supp. 2d at 402 n.2. Respondent argued to the Court of Appeals that this Court abused its discretion in confirming the arbitration award, and sought reversal of the judgment. The Second Circuit summarily affirmed the judgment, rejected all of respondent's arguments, and awarded attorneys' fees to petitioners, who had sought the award in part based on the claim that respondent "had no legitimate basis upon which to challenge the Award on appeal." (Ltr. from Louis B. Kimmelman to the Court, Aug. 24, 2007, Ex. 13, at 29.) If this is victory, one shudders to think what defeat would look like. In fact, petitioners' counsel, as appellees, could have achieved no greater success than they did.

The second argument, though cursorily made, has more weight. Respondent argues that it spent only some $130,000 on the appeal, less than a quarter of the fees sought by petitioners, and argues based on this comparison that the fees sought "[a]re excessive and should be reduced." (Ltr. from Lawrence G. McMichael to the Court, Sept. 18, 2007, at 1.) A comparison to respondent's legal fees, however, is not as persuasive as it might seem at first blush. As the briefing of the instant motion illustrates, respondent practices a form of "asymmetric warfare" in

4

its approach to this litigation. Petitioners submitted a bulky explanation of all that had occurred in the Second Circuit. This, of course, was necessitated by the need to acquaint this Court with the nature of the work done in the Court of Appeals, since, unlike the panel that chose not to resolve this application, this Court was not previously familiar with the appellate record. Respondent, in contrast, submitted a letter of five paragraphs, three of which provide introductory or background material, one of which advances a frivolous argument, and one of which simply notes that respondent spent much less money briefing the appeal. (Id. at 1-2.) Just as it is easier to ask the Court to search petitioners' billing records for evidence of excess than to do the work of identifying and pointing out arguably unnecessary costs, it is generally easier to make meritless arguments on appeal than to unpack and refute them. If respondent pursues weak arguments to obstruct and delay petitioners' ability to effectuate the arbitration award, and petitioners choose to do a more thorough job, respondent's costs are not a fair comparator.

Nevertheless, despite respondent's failure to identify any legitimate reason to deny petitioners' application, the burden remains on petitioners to demonstrate the reasonableness of their requested fee. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (noting that "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"). Sheehan v. Metropolitan Life Ins. Co., 450 F. Supp. 2d 321, 326 (S.D.N.Y. 2006) ("The burden of establishing a reasonable rate is on the fee applicant."). In light of the scant materials submitted by petitioners to justify their requested fee, the Court is not convinced that petitioners' request for upwards of nearly $600,000 in appellate attorneys' fees for their principal counsel is reasonable.

Although the Court has no quarrel with the hourly rates charged by petitioners' counsel to their corporate clients, the Court places significant weight on the fact that it awarded fees and expenses of less than $300,000 for the entirety of proceedings before this Court. (Ltr. from Louis B. Kimmelman to the Court, Aug. 24, 2007, Exs. 3-4.) Although the unusually large monetary award in this case, amounting to $100 million plus interest and costs, might justify greater than usual care and thoroughness in the briefing and argument of issues on appeal, petitioners have not sufficiently demonstrated why it should cost nearly twice as much to make in the Court of Appeals arguments that essentially had already been made and proven persuasive in the District Court. This is particularly true given that no trial occurred in this case, and thus the nature of the legal work performed both in this Court and the Court of Appeals consisted mainly of drafting briefs relating to substantially the same subject matter. Given that petitioners had already researched many of the relevant issues, petitioners' preparation of their appellate briefs presumably should have taken considerably less time than their briefing to this Court.

Petitioners point out that respondent made three meritless motions to expand the record on appeal, which required three additional briefs to be prepared and filed by petitioners. (Id. at 1.) Petitioners also note that, unlike this Court, the Court of Appeals heard oral argument from the parties. (Ltr. from Louis B. Kimmelman to the Court, Sept. 24, 2007, at 1.) These additional proceedings, although certainly relevant to calculating the appropriate fee amount, cannot by themselves justify a nearly twofold increase in the cost of defending the judgment on appeal. Although there conceivably may be instances in which a party's appellate expenses and fees dwarf those incurred in the district court, petitioners in this case have not met their burden of proving that "the hours expended by counsel . . . were reasonable in an [appeal] of this nature."

Cho v. Koam Med. Servs. P.C., __ F. Supp. 2d __, No. 05 Civ. 5265, 2007 WL 4268609, at *4 (E.D.N.Y. Nov. 30, 2007).

This Court does not presume to know the precise number of hours that a "reasonable attorney" would have spent briefing and arguing this case on appeal, Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992), but the record does not support petitioners' request for attorneys' fees nearly twice that awarded at the district court level. Although a court-determined award of attorneys' fees will often be only a rough estimate of "what a reasonable, paying client would be willing to pay," Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 112 (2d Cir. 2007), petitioners' failure to proffer more detailed evidence to justify their fee request leaves the Court with little else besides its own familiarity with this case and its general experience in setting fees. See Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). Based on the considerations discussed above, the Court concludes that $400,000, approximately one-third more than the amount awarded in the district court, is an appropriate fee award for the principal attorneys on the appeal.[2]

In addition, petitioner Chemical Overseas Holdings's request for $13,948 in expenses must be denied because it has failed to submit *any* documentary evidence supporting these expenses, or even the most minimal description of what they are. See Kingvision Pay-Per-View, Ltd. v. Castillo Restaurant Corp., No. 06 Civ. 617, 2007 WL 841804, at *7 (E.D.N.Y. 2007) (denying request for costs where "plaintiff has submitted no documentary evidence in support of

---

[2] The request of petitioners Credit Suisse First Boston and Dresdner Bank Lateinamerika AG for $35,575.24 in attorneys' fees is approved in its entirety. The amount is self-evidently a reasonable, indeed modest, fee for attorneys monitoring appellate proceedings for co-appellees with a significant interest in the appeal.

its request"). The denial is without prejudice, however, as the amount does not appear unreasonable. A supplemental award of expenses will be considered upon submission of proper detailed documentation of the expenses incurred.

## CONCLUSION

For the foregoing reasons, petitioners' request for attorneys' fees is granted in the amount of $400,000 to petitioner Chemical Overseas Holdings, Inc., and $35,575.24 to petitioners Credit Suisse First Boston and Dresdner Bank Lateinamerika AG. Petitioner Chemical Overseas Holdings's request for expenses is denied without prejudice.

SO ORDERED:

Dated: New York, New York
December 21, 2007

GERARD E. LYNCH
United States District Judge